# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00289-CV

**City of San Angelo, Texas and Menard County Water Control and Improvement District No. 1, Appellants**

**v.**

**Texas Natural Resource Conservation Commission, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. GV2-01207, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING

This case involves an Open Meetings Act challenge to the December 5, 2001, meeting of the Texas Natural Resource Conservation Commission (Athe Commission@).[1] Appellants City of San Angelo and Menard County Water Control and Improvement District No. 1 appeal the trial court=s denial of their request for mandamus, refusal to grant an injunction, and finding that the Commission provided

---

[1] By statute effective September 1, 2001, the legislature changed the name of the Texas Natural Resource Conservation Commission to the Texas Commission on Environmental Quality, to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform any act authorized by law under either title. *See* Act of April 20, 2001, 77th Leg., R.S., ch. 965, ' 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name, while continuing to recognize the former. Because the parties have referred to the agency as the Commission in the briefs and at oral argument, we will as well in this opinion.

adequate notice to the public pursuant to the Open Meetings Act. *See* Tex. Gov=t Code Ann. '' 551.001-.146 (West 1994 & Supp. 2002). Appellants contend that the Commission=s posted agenda violated the notice requirements of the Open Meetings Act because it was both vague and insufficient. Therefore, they argue, the trial court erred in not enjoining the Commission from acting under the interim orders adopted at the meeting. Because the agenda items were sufficiently specific to satisfy the Open Meeting Act=s notice requirements, we will affirm the trial court=s judgment.

**BACKGROUND**

This dispute arises from a series of petitions requesting that the Commission appoint watermasters for the San Saba River and the Concho River Basin.[2] Chapter 11 of the Water Code allows the Commission to appoint a Awatermaster.@ Tex. Water Code Ann. ' 11.452 (West 1994). A watermaster is a Commission employee who administers and enforces water right decisions in a given geographic area. *See* Tex. Water Code Ann. '' 11.325, 11.333 (West 1994). The Commission can appoint a watermaster on either the petition of twenty-five or more holders of water rights in an area, or on its own motion. Tex. Water Code Ann. ' 11.451 (West 1994). Upon receiving a petition, the Commission must hold an evidentiary hearing to determine if a threat exists to the rights of senior water right holders in

---

[2] The Commission received three petitions for appointment of a watermaster on the Concho River and assigned them Docket No. 2000-0344-WR. The first petition was signed primarily by persons claiming to be domestic and livestock water users. The second petition was signed by thirty-four individuals who were paper water right holders. The third petition was signed by three paper right holders and approximately 104 persons claiming to be domestic and livestock water users. The Commission also received a petition concerning the San Saba River and assigned it Docket No. 2001-0993-WR. This petition was signed by twelve individuals who were paper water right holders and forty-three who were domestic and livestock water users.

the river basin sufficient to require the Commission to appoint a watermaster. Tex. Water Code Ann. '

11.452(a), (c).

Instead of conducting this evidentiary hearing during a full commission meeting, the

Commission may refer the matter to the Natural Resource Conservation Division of the State Office of

Administrative Hearings (ASOAH@). Tex. Gov=t Code Ann. ' 2003.047 (West 2000). In the instant case,

however, before referring the filed petitions for an evidentiary hearing, the Commission chose to address in

an open meeting whether domestic and livestock water users were water right holders for purposes of

signing a petition requesting the appointment of a watermaster.[3] The executive director of the Commission

filed a letter with the Commission=s Office of Chief Clerk requesting that the Commission consider four legal

issues regarding the filed petitions before sending the fact issues to SOAH for evidentiary hearings:

1. Are persons who take and use state water without a permit for domestic and livestock use (d&ls) included in the designation in Tex. Water Code ' 11.452(b) as Apersons

---

[3] Because both water right holders and domestic and livestock users of water diverted from Texas streams signed these petitions, the petitions= validity depended on whether the water code recognizes the domestic and livestock water users as water right holders. The Commission can issue to persons written water rights (permits or certificates of adjudication). These persons are then classified as Apaper water right holders.@ *See* Tex. Water Code Ann. '' 11.121-.186 (West 1994). By contrast, domestic and livestock water users claim rights to use state water for domestic and livestock purposes based on either a statutory exemption or common law right. *See* Tex. Water Code Ann. ' 11.142 (West 1994).

who hold water rights in the river basin or segment of the river basin@ who may therefore present evidence at the hearing?

2. Are d&ls Asenior water right holders@ under Tex. Water Code '' 11.451 and 11.452(c)?

3. Are d&ls Aholders of water rights@ under Tex. Water Code ' 11.329 who may be assessed fees to pay for the watermaster?

4. For the San Saba petition, are d&ls Aholders of water rights@ under Tex. Water Code ' 11.451 who may petition for a watermaster?

The Commission sent a copy of the executive director=s letter to the persons most directly affected, including all petitioners and paper water right holders for both rivers. Appellants are governmental entities charged with authority and responsibility for water-related matters, and therefore received a copy. The letter stated that the Commission intended to consider the executive director=s legal issues and consider the executive director=s request to send the petitions to SOAH for an evidentiary hearing at the next meeting.[4] The letter also described the petitions the Commission had received and catalogued whether the signatories of the petitions were water right holders or domestic and livestock water users. Most importantly, the recipients were invited to submit legal briefs on the four legal issues prior to the meeting. The City of San Angelo chose to respond to the letter by submitting a brief addressing the four issues.

---

[4] The Commission intended to discuss the petitions on October 10, but, because of time constraints, delayed consideration until the December 5 meeting. The agenda for the December 5 meeting constituted the second time the identical agenda notices were published.

Having provided exhaustive notice to the specially interested parties, the Commission also provided notice to the general public that it intended to address these petitions for watermaster appointment and the related legal issues at its next meeting. Before the December 5 meeting, the Commission delivered its agenda to the Secretary of State, who published it in the November 26 Texas Register pursuant to the statutory notice requirements. *See* Tex. Gov=t Code Ann. '' 551.044, .048 (West Supp. 2002). The agenda included the following paragraphs:

> Item 1. Docket No. 2000-0344-WR. Consideration of the four legal issues raised by the Executive Director with regard to the petitions for a watermaster for the Concho River and its tributaries under Texas Water Code ch. 11. These legal issues concern whether domestic and livestock users on the Concho River and its tributaries are Awater right holders@ and Asenior water right holders.@ The Concho River and its tributaries cover Irion, Tom Green, Concho, Runnels, Coke, Schleicher, and Sterling Counties.

> Item 2. Docket No. 2001-0993-WR. Consideration of the four legal issues raised by the Executive Director with regard to the petitions for a watermaster for the San Saba River and its tributaries under Texas Water Code ch. 11. These legal issues concern whether domestic and livestock users on the Concho River [sic] and its tributaries and Awater right holders@ and Asenior water right holders.@ The San Saba River and its tributaries cover Schleicher, Menard, McCulloch, Sutton, Mason, and San Saba Counties.[5]

On December 10, 2001, the Commission issued two interim orders reflecting the actions taken at the December 5 meeting. The interim order regarding the Concho River Basin read:

> (1) the petitions were filed by 25 or more water right holders on the Concho River;

---

[5] The second agenda item initially addresses the Commission=s intent to consider the San Saba petition. In the second of three mentions of the river in question, however, the word AConcho@ was inadvertently substituted for ASan Saba.@ Despite this clerical error, it is clear that, read together, the two agenda items indicate that the same issues were to be discussed regarding both river areas.

(2) domestic and livestock users are affected persons who may participate in and present evidence at a hearing on the petitions;

(3) there is no statutory authority to require the payment of fees by domestic and livestock users for watermaster operations; and

(4) the petitions are referred to SOAH for a hearing on whether the rights of senior water rights holders in the basin or segment of the basin are threatened.[6]

Appellants filed suit seeking both mandamus and injunction in the Travis County District Court, complaining that the interim orders manifested a violation of the Open Meetings Act because the agenda for the meeting at which they were adopted failed to put the public on notice that the Commission would Atake action.@ The trial court, finding that the notice satisfied the Open Meetings Act requirements, denied appellants relief. Appellants argue that the trial court erred in determining that the Commission=s notice to the public was sufficient. They contend that the notice was inadequate when read in light of the Commission=s interim orders. The Commission counters that the agenda items adequately described the Asubject@ of the meeting as the Open Meetings Act requires and, therefore, that the interim orders were within the scope of their notice.

## DISCUSSION

---

[6] The interim order concerning the San Saba River is substantially similar to the Concho River Basin interim order. However, the Commission did not decide whether the petition had been filed by twenty-five or more water right holders. Rather, the Commission ordered that Athe petition merits a hearing at SOAH.@

Because the content of the notice is undisputed, determining its adequacy is a question of law. *Rettberg v. Texas Dep=t of Health*, 873 S.W.2d 408, 413 (Tex. App.CAustin 1994, no writ). In reviewing notices under the Open Meetings Act, we must determine if the notice was sufficiently specific to alert the general public to the topic to be considered. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). Appellants argue that: (1) because Aconsideration@ does not mean Aaction@ these agenda items did not give notice of the possibility that the Commission would take action; and (2) the Commission gave a narrow and restricted notice which failed to fairly identify the substance of the four legal issuesCtherefore, the subject-matter of the meeting was limited to those issues. We disagree. We will first consider whether the Commission=s actions exceeded the notice given.

Appellants first challenge the agenda items=descriptions of the action the Commission would take at the meeting; in essence, they challenge the use of the verb Ato consider.@ The Open Meetings Act requires that the Commission give Awritten notice of the date, hour, place, and subject of each meeting held.@ Tex. Gov=t Code Ann. ' 551.041 (West 1994). Most cases addressing the statutory notice requirement concern whether the subject-matter of a meeting has been adequately identified. *See, e.g.*, *Cox Enter., Inc. v. Board of Tr. of the Austin Indep, Sch. Dist.*, 706 S.W.2d 956 (Tex. 1986) (the AOpen Meetings Act requires a full disclosure of the *subject matter* of the meetings@); *Hays County Water Planning P=ship v. Hays County*, 41 S.W.3d 174, 180 (Tex. App.CAustin 2001, pet. denied) (holding that notice must convey substance of meeting); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River*, No. 03-02-00221-CV, slip op. at 8, 2002 Tex. App. LEXIS 7756, at *29 (Tex. App.CAustin Oct. 31, 2002, no pet. h.) (holding notice sufficient even though agenda description Amight not inform the

casual reader of the precise consequences@). When the notice specifically discloses the subject to be considered at the upcoming meeting, the statute=s notice requirement is met and the described meeting is considered an open meeting where the Commission can take final action, decide, or vote on a matter. *See Cox Enter.*, 706 S.W.2d at 959; Tex. Gov=t Code Ann. ' 551.102 (West 1994).

The Texas Supreme Court has addressed the extent to which a governmental entity must specify the type of action it will take in an open meeting in *Texas Turnpike Authority v. City of Fort Worth*, 554 S.W.2d 675, 676 (Tex. 1977). *Texas Turnpike* involved a challenged notice which stated that the Texas Turnpike Authority would A*consider* a request . . . to determine feasibility of a bond issue to expand and enlarge the Dallas-Fort Worth Turnpike.@ *Id.* (emphasis added). After Aconsidering@ the request, the Authority authorized a feasibility study and expended funds for the study. The City sued to enjoin the study and expenditure of funds, claiming that the notice should have stated that the board was reversing its prior declaration that the turnpike would be a toll-free road. The court rejected this argument, pointing out that it was not necessary Ato state all of the consequences which may necessarily flow from the consideration of the subject stated.@ *Id.* Initiating the feasibility study was a probable consequence of considering the request; the court allowed the Turnpike Authority to proceed with its study although its agenda had only provided that it would Aconsider a request.@[7] *Id.*

---

[7] Appellants argue that *Texas Turnpike* is no longer the law. We disagree. Although we now

**8**

apply a literal compliance standard under the Open Meetings Act, the principle established in *Texas Turnpike* regarding the necessity of giving notice of all of a meeting=s potential consequences is still consistently applied. *See Cox Enter., Inc. v. Board of Tr. of the Austin Indep, Sch. Dist.*, 706 S.W.2d 956, 958 (Tex. 1986); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River*, No. 03-02-00221-CV, slip op. at 7, 2002 Tex. App. LEXIS 7756, at *25 (Tex. App.CAustin Oct. 31, 2002, no pet. h.).

Appellants make a similar argument that by using the word Aconsideration@ in its agenda, the Commission has constrained its ability to act. Appellants read the word Aconsideration@ to preclude the possibility of Aaction@; they would require the Commission=s agenda to have included a specific statement that the Commission would Atake action@ during the December 5 meeting. We do not read Aconsideration@ so narrowly. AConsideration@ necessarily encompasses Aaction.@ The word Aconsideration@ alone was sufficient to put the general public on notice that the Commission might act during the meeting. As in *Texas Turnpike*, the question is not whether the Commission has detailed all possible outcomes of addressing a particular topic, but whether the public is notified that the topic will be part of the meeting. The Open Meetings Act does not require the Commission to list the precise consequences of the consideration of a topic. *Friends of Canyon Lake*, slip op. at 8, 2002 Tex. App. LEXIS 7756, at \*29. We hold, then, that the Commission did not have to include additional language indicating that it might act on issues under consideration. Next, we address whether the agenda is specific enough to alert a reader to the subject-matter of the meeting.

Appellants argue that the Commission considered and acted upon issues at the meeting that were outside the scope of the subject-matter referenced in the agenda. They contend that the agenda only gives notice that the meeting would address four legal issues raised by the executive director and that the Commission considered and decided other, more general issues with regard to the watermaster petitions. In reviewing notices under the Open Meetings Act, we must ensure that the notice fulfills the act=s primary purposes of enabling public access to and increasing public knowledge of government decision-making. *City of San Antonio*, 820 S.W.2d at 765. The Open Meetings Act Asafeguard[s] the public=s interest in

**10**

knowing the workings of its governmental bodies.@ *Cox Enter.*, 706 S.W.2d at 960. The Act=s intent is to give the public opportunity to inform itself of the topic of each given meeting. *Rettberg*, 873 S.W.2d at 411. The notice has to be sufficiently descriptive to alert readers to the particular issue the governing body will address. *Hays County*, 41 S.W.3d at 180.

Appellants argue that: (1) the notice was not sufficient because it did not adequately describe the legal issues the Commission would consider and (2) the notice did not indicate the Commission would consider the ultimate validity of the petitions.[8] They contend that the Commission=s agenda only provided a vague description of an intent to consider unspecified legal issues. Appellants argue that the Commission could have provided notice that it would consider the watermaster petitions generally, but instead it narrowed its subject matter to just the legal issues surrounding the petitions. Because of its specificity, appellants argue that the agenda did not give notice that the Commission would consider the watermaster petitions generally. We do not read the agenda=s description so narrowly.

Our inquiry into the sufficiency of notice is whether a reader was alerted to the *substance* of the proposed meeting. *See Hays County*, 41 S.W.3d at 180. The agenda informs readers that for the

---

[8] We note that each appellant was given specific notice regarding all pertinent issues; the City of San Angelo even accepted the opportunity to brief these issues before attending the meeting. Appellants now complain that the *public* did not receive *specific notice*. *See City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991) (holding that tailored notice is not required for individuals with specific interest in proposed action, only general notice to the public).

Concho and San Saba River: (1) petitions for watermaster had been filed; (2) the executive director had raised four legal issues regarding these petitions; (3) these legal issues were governed by chapter 11 of the Water Code; (4) the legal issues concerned whether domestic and livestock water users were Awater right holders@ and Asenior water right holders;@ and (5) the rivers and tributaries covered by the petitions. Appellants argue that the agenda was restricted to: Aconsideration of four legal issues raised by the Executive Director.@ However, the agenda=s description of the topic does not end with this phrase, but instead continues: Awith regard to the petitions for a watermaster.@ Read in its entirety, the agenda sufficiently notifies an interested reader that the Commission would be considering issues related generically to the watermaster petitions at the December 5 meeting.

Although the agenda could have been less specific, its specificity does not make the notice less informative than if the Commission had omitted the additional descriptions. As the supreme court recognized in *City of San Antonio*, there can be situations where the degree of specificity Awould so overwhelm readers that it would prove even less informative@ than a general notice; the present agenda items do not reach that point. *City of San Antonio*, 820 S.W.2d at 766. Therefore, we hold that the agenda items were sufficiently descriptive to inform a reader of the broad topics to be addressed at the meeting and that it was not necessary for the agenda to enumerate the legal issues in the public agenda as it had done in the mailed notices.

Appellants attempt to bolster their challenge to the description of the meeting=s subject-matter by arguing that, because it referred the petitions to SOAH for a hearing, the Commission is now precluded from arguing that the petitions were not sufficient to warrant a hearing on the merits. In

challenging the interim orders specifically, appellants would confer on the Commission=s decision to refer to SOAH its questions regarding the watermaster petitions the binding legal effect of a final agency action. We disagree with this assessment. An evidentiary hearing before SOAH is a means for determining the underlying facts in an administrative dispute while protecting the rights of all parties. The administrative law judge may consider any issue he determines material and supported by evidence; he can revisit any issue provisionally resolved by the Commission. Tex. Gov=t Code Ann. ' 2003.047(e), (f)(1)-(2). In referring the question, the Commission actually afforded appellants= interests *greater* procedural protection.

Because we hold that the agenda was sufficient, we overrule appellants= issue.

## CONCLUSION

Having overruled appellants= issues, we hold that the notice for the December 5, 2001, meeting was sufficient to meet the requirements of the Open Meetings Act. Accordingly, we affirm the trial court=s judgment.

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: December 5, 2002

Publish

**13**