Ben MARKOWSKI, et al., Appellants,

v.

The CITY OF MARLIN, Appellee.

No. 10–95–317–CV.

Court of Appeals of Texas, Waco.

Jan. 22, 1997.

Rehearing Overruled Jan. 22, 1997.

---

R. John Cullar, Waco, Ron Butler, Marlin, for appellants.

David J. LaBrec, Strasburger & Price, L.L.P., Dallas, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE Justice.

Ben Markowski, the Marlin Fire Chief, and Herschel Bolden, the Captain of the Fire Department, sued the City of Marlin for violating the Texas Open Meetings Act. *See* TEX. GOV'T CODE ANN. §§ 551.001–.146 (Vernon 1994 & Supp.1996). In a bench trial, the judge found that the City of Marlin (city) had complied with the Open Meetings Act (the Act) and rendered judgment in the city's favor. Markowski and Bolden appeal on eight points. They allege that the court erred in:

- denying their motion for judgment because they established as a matter of law that the city had violated the Texas Open Meetings Act;

- finding that the city had not violated the Open Meetings Act on April 16, 1993, and April 22, 1993;

- finding that the attorney-client privilege applied to the April 22 meeting;

- relying on evidence that was not properly admitted and heard outside the presence of Appellants and their attorney;

- finding that Appellants failed to exhaust their remedies;

- finding Appellants failed to mitigate damages; and

- finding that Appellants were not entitled to be reinstated or awarded back pay, benefits, attorneys fees, and pre- and post-judgment interest as a matter of law.

We will affirm the judgment.

## BACKGROUND

This controversy arose when Jackie Keggins, a fire fighter, complained to the Marlin City Council (council) about racial discrimination in the fire department. On April 16, 1993, the council met and, in an executive session, heard Keggins' complaints. Keggins accused Ben Markowski, the Fire Chief, and Herschel Bolden, the Fire Captain, of being primarily responsible for the racial discrimination in the department. As a result, the

council immediately suspended Markowski and Bolden without pay.

On April 19, the city posted a notice that an executive session of the council would be held on April 22 to consider what further action to take on Markowski's and Bolden's suspensions. Markowski and Bolden then filed suit asserting a violation of the Act on April 16 and requested that any action taken during the April 22 meeting be taken in open session. The city responded by posting a notice of an emergency meeting which would be held on April 22 to discuss the lawsuit. The council met on April 22 in open session and announced that it was going into closed session to discuss the lawsuit. After concluding the closed session, the council reconvened in open session. During that open session, the council modified its decision to suspend Markowski and Bolden, changing it to suspensions with pay. The council also allowed Markowski's and Bolden's attorney to make a statement concerning the charges against them. After hearing the statement, the council asked if Markowski and Bolden wanted to present any witnesses. They did not present any witnesses, and their attorney stated that they "planned to be at the courthouse." The council then terminated Markowski and Bolden.

After being terminated, Markowski and Bolden continued their suit against the city. Because their petition alleged causes of action under federal statutes, the city removed their claims to the United States District Court. The federal district court resolved most of the claims against them and remanded their remaining claims of violations of the Act to state district court. The state court initially entered a partial summary judgment, ruling that the Act had been violated, and scheduled a hearing on the question of damages. After the later hearing, the court reversed itself, found that the Act had not been violated, set aside its partial summary judgment, and entered judgment that Markowski and Bolden take nothing.

Appellants are before us asserting that the record conclusively shows that: (1) the city council violated the Act; (2) they conclusively established their damages; and (3) we should reverse the judgment and render judgment

in their favor. They do not assert that the evidence is factually insufficient to support the court's findings; thus, they are asking for an "all or nothing" ruling by this court.

During the final hearing, the court allowed the city, over objection, to present testimony of the city's attorney of record about the privileged nature of matters discussed during the executive session held on April 22. The court also allowed the city to present, in-camera, a tape recording of the executive session, which the court reviewed and used in formulating its ruling that the city did not violate the Act. Although they acknowledge that a court may review such a recording under some circumstances, Appellants assert that the use of the tape recording "as evidence" violated the rules of evidence and notions of fair play under the due-process clause of the federal constitution. Because of our view of the proper way to resolve the appeal, we will assume the court erred in both respects, and we will not consider either the testimony of the city's lawyer or the tape recording as part of the evidence that we will review.

### STANDARD OF REVIEW

■ Appellants have challenged the trial court's findings of fact on legal insufficiency grounds. They are attacking adverse findings of fact on which they had the burden of proof. When the party who had the burden of proof on an issue receives a negative finding, the adverse finding represents a refusal to find the fact from a preponderance of the evidence. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Consequently, when reviewing an adverse finding upon which the appealing party has the burden of proof, the court will employ a two-part test to determine whether the fact has been established as a matter of law. *Id.; Buzbee v. Buzbee*, 870 S.W.2d 335, 339 (Tex.App.—Waco 1994, no writ). The court will review the record for evidence that supports the adverse finding, ignoring all evidence to the contrary. *Sterner*, 767 S.W.2d at 690; *Buzbee*, 870 S.W.2d at 339. If evidence supports the negative answer, the inquiry ends. *See id.* However, if the court finds no evidence to support the negative answer, then the

entire record must be examined to ascertain whether the contrary proposition is established as a matter of law. *Id.* The point of error will be sustained only if the contrary proposition is established as a matter of law. *See id.*

### TEXAS OPEN MEETINGS ACT

In their first three points, the Appellants complain that the trial court erred in refusing to grant their motion for judgment and refusing to find that the city violated the Open Meetings Act because the evidence established the violation as a matter of law. The Act mandates that "every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this subchapter." TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994). The Act promotes "openness at every stage of [a governing body's] deliberations." *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300 (Tex.1990). This openness allows the public to have access to government meetings and "increase [its] knowledge of government decisionmaking." *San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762, 765 (Tex.1991). The Act provides a few very limited exceptions to this general policy of openness. *Acker,* 790 S.W.2d at 300; *Cox Enter., Inc. v. Board of Trustees,* 706 S.W.2d 956, 958 (Tex. 1986). The Supreme Court has demanded "exact and literal compliance with the terms of the statute." *Acker,* 790 S.W.2d at 300.

■ Appellants argue in point three that the city violated the Act on April 22. They contend that the emergency notice concerning the April 22 executive session did not comply with the Act. Generally, the Act requires that all notices of any meeting of a governing body be posted for at least 72 hours before the scheduled time of the meeting. TEX. GOV'T CODE ANN. § 551.043 (Vernon 1994). However, if an emergency arises, then the notice must be posted at least two hours before the meeting. *Id.* § 551.045(a) (Vernon 1994). To qualify as an emergency or urgent public necessity, an imminent threat to public health and safety or a reasonably unforeseeable situation which requires immediate action must exist. *Id.* § 551.045(b). The emergency notice must

"clearly identify the emergency or urgent public necessity." *Id.* § 551.045(c). A notice can be invalidated if it does not clearly identify the emergency or an actual emergency does not exist. *See Piazza v. City of Granger,* 909 S.W.2d 529, 533 (Tex.App.—Austin 1995, no writ).

Appellants assert that the second notice of the April 22 meeting did not describe an emergency or a matter of public necessity, citing *Piazza* in support of their contention. *Id.* In *Piazza,* the notice stated that an emergency meeting was being held because the council lacked confidence in one of its police officers. *Id.* The court determined that "'lack of confidence' in a police officer, without further detail, [did] not clearly identify an emergency or urgent public necessity...." *Id.* The Austin Court further explained that "the development of a 'lack of confidence' in a police officer by a governing body is a foreseeable situation, so foreseeable, in fact, that the Local Government Code specifically provides that a police officer may be terminated for that very reason." *Id.* (citing TEX. LOC. GOV'T CODE ANN. § 22.077(b) (Vernon 1988)). As a consequence, the improper notice voided the council's termination of the police officer. *Id.* at 535.

■ This case is distinguishable from *Piazza.* In *Piazza,* it was unclear what the notice meant by lack of confidence in the officer and why that was an emergency. Here, the notice identifies an emergency. The emergency notice posted by the city specifically states that a closed meeting was to be held so that the council could obtain legal advice from its attorney concerning what action should be taken on the suit filed by Markowski and Bolden. The city council found itself in the unexpected situation of being sued the day before a public hearing concerning Appellants' status was to be held. It is apparent from the notice that the need for information about how to deal with Appellants' lawsuit is the emergency; thus, no further detail or explanation was required. In fact, requiring the city to give a more detailed notice would defeat the purpose of section 551.071 because mandating more explanation in the notice would interfere with

the confidentiality of these private legal consultations, which the legislature has specifically sanctioned. *See Lone Star Greyhound Park v. Racing Comm'n,* 863 S.W.2d 742, 747 (Tex.App.—Austin 1993, writ denied). Consequently, Appellants' contentions about the adequacy of the emergency notice must fail.

■ Next, Appellants argue that receipt of a lawsuit does not constitute an emergency, citing an Attorney General Opinion JM–1037. In the opinion, the attorney general stated that hiring a lawyer and determining if the members of the council could be indemnified was not an emergency, especially in view of the fact that the city still had twenty days to file an answer. Thus, the seventy-two hour notice was required rather than the two hour emergency notice. Here, Appellants unexpectedly filed their lawsuit the day before a meeting, which they requested be open, was to be held. Consequently, this unforeseeable action by Appellants placed the council in a position of needing immediate advice from counsel because the council's actions at the public hearing could directly affect the lawsuit.

Appellants also assert that the council improperly heard charges against them in violation of section 551.074 when it met with its attorney in closed session. Section 551.074 of the Act allows a closed meeting so that a governing body can "deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee" or "hear a complaint or charge against an officer or employee." Tex. Gov't Code Ann. § 551.074 (Vernon 1994). However, if the officer or employee requests a public hearing, the governing body is required to hold an open meeting. *Id.* The Act also provides that a governing body can privately consult with its attorney on pending or contemplated litigation or a settlement offer or "on a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with this chapter." *Id.* § 551.071 (Vernon 1994). The question is how, given these facts, to apply these two provisions.

■ The court found that the council and its attorney discussed the charges or complaints against Appellants in the closed session. However, since the suit brought by Appellants necessarily involved the allegations and charges against them, those allegations would naturally be discussed in the council's meeting with its attorney. Thus, we hold that when a pending lawsuit involves unresolved charges or complaints about an officer or employee, it is permissible for the council to discuss those charges with its attorney as long as the discussion relates to the lawsuit. Additionally, although we do not consider the contents of the tape recording of the executive session as "evidence," we can consider the court's finding that no final decision was made in the executive session. *See id.* § 551.104(b) (Vernon 1994). In fact, after this closed meeting, the council met again in open session and gave Appellants an opportunity to speak concerning the charges made against them, as they had requested. Appellants' counsel made a statement but declined the council's offer to present witnesses who would testify on their behalf. Instead, Appellants' attorney only stated that they "planned to be at the courthouse." The council then asked if any one at the meeting wanted to speak on Markowski's and Bolden's behalf. After hearing one witness speak for the Appellants, the council voted in open session to terminate them. Because the council voted to terminate Appellants at an open meeting, the court properly found that no violation of the Act occurred. *See Sterner,* 767 S.W.2d at 690. Because we find some evidence in support of the finding, the inquiry ends. *See id.* Point three is overruled.

■ In point two, Appellants challenge the adequacy of the notice of the April 16, 1993 meeting. They contend that the April 16 notice did not sufficiently inform the public that action might be taken against them. Notice is sufficient if "it would alert a reader to the fact that some action" would be taken on a certain topic. *Lower Colorado River Auth. v. City of San Marcos,* 523 S.W.2d 641, 646 (Tex.1975); *see also Rettberg v. Texas Dep't of Health,* 873 S.W.2d 408, 411 (Tex. App.—Austin 1994, no writ). The members of the interested public are the "intended beneficiaries of the Act," and as long as the

public is informed, the purpose of the Open Meetings Act is fulfilled. *San Antonio,* 820 S.W.2d at 765. It is irrelevant whether the individuals most likely to be affected are given notice. *Id.* To determine if the notice sufficiently informs the public of the topic under discussion, the court will focus its analysis on comparing the content of the notice given and the action taken at the meeting. *Rettberg,* 873 S.W.2d at 412; *Point Isabel Indep. Sch. Dist. v. Hinojosa,* 797 S.W.2d 176, 180 (Tex.App.—Corpus Christi 1990, writ denied). The notice must be more specific if the public has a special interest in the topic under discussion. *Cox Enter. v. Board of Trustees of Austin Indep. Sch. Dist.,* 706 S.W.2d 956, 959 (Tex.1986); *Mayes v. City of De Leon,* 922 S.W.2d 200, 203 (Tex.App.—Eastland 1996, writ denied).

■ The question is whether the notice sufficiently informed the public that some action was to be taken with regard to Markowski and Bolden. The notice of the April 16 meeting states the following:

EXECUTIVE SESSION: In accordance with VACTS, Article 6252–17, Sec. 2(g) Personnel

    A.  Grievance of Firefighter Keggins.

Action if any to be taken on grievance of firefighter Keggins.

The notice was inadequate. Not only did the public have a special interest in jobs of the Fire Chief and the Fire Captain, but the notice did not even inform the public that charges were being made against them. *See Mayes,* 922 S.W.2d at 203 (holding that the job of a police chief was of special interest to the public because of "the broad contact with the public that those duties involve"). Since the notice of the April 16 meeting was not sufficient, the action taken to suspend them without pay was invalid.

■ Although we find that the action taken at the meeting on April 16 violated the Open Meetings Act, the record shows that the council corrected its invalid action at the April 22 meeting. Action undertaken at an invalid meeting can be ratified at a later valid meeting as long as there is no retroactive effect. *Lower Colorado River Auth.,* 523 S.W.2d at 646–47 (concluding that ratification

of an invalid action cannot have retroactive effect); *City of Bells v. Greater Texoma Utility Auth.,* 790 S.W.2d 6, 11 (Tex.App.—Dallas 1990, writ denied) (upholding the Utilities' action which re-authorized an earlier invalid action). Appellants were suspended without pay at the April 16 meeting. At the April 22 meeting, the council modified its decision and suspended them with pay. So in essence, Appellants benefitted because the council remedied its invalid action of April 16 by changing to suspensions with pay. *See City of Bells,* 790 S.W.2d at 11. Point two is overruled. Although the action taken at the April 16 meeting violated the Open Meetings Act, the record supports the trial court's finding that the April 22 revision of the earlier act and the termination of Appellants' employment complied with the Act. *See Sterner,* 767 S.W.2d at 690. Thus, the Appellants are not entitled to judgment. We overrule point one.

### ATTORNEY–CLIENT PRIVILEGE

■ Appellants' fourth point asserts that no evidence supports the trial court's finding that the attorney-client privilege applied to the council's discussion of the charges and complaints against them. Rule 503 of the Rules of Evidence protects confidential information exchanged between an attorney and client from disclosure. *See* Tex.R. Civ. Evid. 503. The attorney-client privilege is an important privilege whose purpose is to promote "unrestrained communication and contact between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney, voluntarily or involuntarily, in any proceeding." *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978). Under Texas Rule of Civil Evidence 503, a public or private entity is considered a client. Tex.R. Civ. Evid. 503. Thus, it follows that a governmental body has as much right as an individual to consult with its attorney without risking the disclosure of important confidential information. The legislature obviously had this purpose in mind when it enacted section 551.071 which allows a governing body to privately consult with its attorney about pending or contemplated liti-

gation. *See* Tex. Gov't Code Ann. § 551.071. Since a governing body can consult privately with its attorney, logic dictates that the information discussed at that meeting should be protected by the attorney-client privilege. However, the party asserting the privilege has the burden of proving that the attorney-client privilege applies. *See Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985) (in the discovery context). Sometimes the only way to prove the privilege is through an in-camera inspection of the privileged documents or other materials. *See Weisel Enter., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986); *Kavanaugh v. Perkins*, 838 S.W.2d 616, 620 (Tex.App.—Dallas 1992, orig. proceeding).

 The city produced the tape of the closed session for an in-camera inspection by the trial judge for the purpose of proving that the attorney-client privilege applied. Upon reviewing the tape, the trial judge found that the attorney-client privilege applied to the discussion in the closed session. Since an in-camera inspection demonstrates that the attorney-client privilege applies, the trial judge properly found that the privilege protected the discussion. Point four is overruled.

 Appellants' point five argues in the alternative that even if the testimony of the city's attorney and the tape of the April 22 closed session are evidence supporting the attorney-client privilege, the trial judge could not base his decision on that evidence because due process requires that they have the opportunity to hear the tape, to test the tape by cross-examination, and to call witnesses in rebuttal. When a trial court is determining whether the attorney-client privilege applies, the court can examine privileged materials in-camera. *See id.* Additionally, the legislature specifically included a provision in the Open Meetings Act which permits a trial court to make an in-camera inspection of tapes of closed sessions or other certified agenda and admit the tapes or other certified agenda into evidence. *See* Tex. Gov't Code Ann. § 551.104(b). Even assuming that the testimony of the attorney was improperly admitted, the trial judge had the authority to make an in-camera inspection of

the tape and base his finding about the closed session on it. Because we do not consider the contents of the tape recording as "evidence," we do not reach Appellants' constitutionally-based claims. We overrule point five.

In points six and seven, Appellants argue that they are not required to exhaust grievance proceedings or mitigate damages because those are not controlling issues in a suit alleging Open Meetings Act violations. Because we have held that the record supports the court's determination that the city properly terminated the Appellants in compliance with the Open Meetings Act, we do not reach the question of whether they should have exhausted grievance proceedings or mitigated damages.

Appellants' point eight asserts that if this court finds that the city violated the Open Meetings Act, then they should be reinstated and awarded back pay, attorneys fees, and interest. Having sustained the court's finding that the Act was not violated on April 22, we overrule point eight.

## CONCLUSION

We conclude that Markowski's and Bolden's legal sufficiency challenges must fail. They are not entitled to judgment as a matter of law; therefore, we affirm the judgment.